UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:  }
        }
WESTERN HEALTHCARE, LLC,  }  Case No. 10-43158-JJR
        }  Chapter 11
    Debtor.  }

## OPINION AND ORDER ON MOTION TO LIFT STAY

Pursuant to a Lease Agreement dated October 1, 2009, (the "Lease") the Debtor leased two assisted living facilities (the "Facilities") from Turenne Properties Ltd. ("Turenne").[1] On November 8, 2010, the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code[2] and in response Turenne filed a Motion for Relief From Automatic Stay (Doc. 7, and herein the "Motion"). In the Motion, Turenne claimed the Lease had expired under its own terms on September 30, 2010, and sought relief from the stay to allow it to take possession of the Facilities. The Debtor alleged that the Lease had been extended for an additional one-year term by mutual agreement and, therefore, had not expired. A hearing on the Motion was held on November 16, 2010, and additional evidence was received on November 30, 2010.[3]

Section 2.02 of the Lease provides that the initial term commenced on the date of the Lease

---

[1] Movant Exhibit 1 is a copy of the Lease.

[2] 11 U.S.C. § 101 *et seq* and herein the Code.

[3] At the November 30th hearing the Court approved employment of Debtor's counsel, gave further considered to the appointment of a patient care ombudsman under Code § 333, and received Movant Exhibit 9 from Turenne. Exhibit 9 is a copy of the prepetition complaint filed by Turenne in state court seeking possession of the Facilities. After reviewing and considering Exhibit 9, the Count concludes that it provides no support for the respective positions of either party.

(i.e. October 1, 2009) and ended September 30, 2010. That Section continues by stating that "with the mutual agreement of the Lessor and Lessee, Lessee may renew the Lease Agreement for an additional one (1) year provided that Lessor and Lessee shall have agreed in writing to such extension or renewal not less than one hundred twenty (120) days prior to the expiration of the Lease Agreement."

The Debtor asserts that through an exchange of email-messages a mutual agreement was reached with Turenne to extend the Lease for an additional one-year term. Debtor's Exhibit B is a print-out of an email-exchange that occurred February 11, 2010 between Tammy Stephenson for Turenne and Alta Wright for the Debtor. The exchange begins with a statement from Stephenson: "I have spoken to Ms. Wallace [general partner of Turenne] about the request you made around [sic] extending the lease agreement. She is willing to extend the lease for one more year after the current end date of September 30, 2010." Stephenson's message continued and discussed the Debtor's purchase of the Facilities, the unpaid rent for February and asked whether the property taxes had been paid. Wright, on behalf of the Debtor, replied: "Sounds good to me." Wright continued her reply by stating that the rent check would be mailed the next day and she was in negotiations about the taxes, and she would make sure the taxes were paid. The Debtor contends that the email-exchange constituted a mutual agreement between the parties that was sufficient to extend the Lease term, while Turenne argues the email-messages did not satisfy the conditions imposed by Section 2.02 for an extension.[4]

---

[4] Section 8.07 of the Lease states that "[a]ny notice of demands to be given hereunder shall be given in writing and sent by recognized national overnight courier to:" Inserted immediately after the quoted sentence are the parties' respective addresses to which notices were to be sent in the prescribed manner. It is unclear whether the preposition "of" appearing between

The last month for which rent was fully paid was July 2010, although the Debtor claims that one-half of the August 2010 rent was paid. Nonetheless, at a minimum half the August rent is unpaid, along with all of September, and if the Lease was extended, all of the rent due for October and November also remains unpaid.[5]

On September 14, 2010, counsel for Turenne sent a letter (the "Demand Letter") to counsel for the Debtor.[6] A statement at the top of the letter states it was being sent via Federal Express—an overnight courier—and via email.[7] The Demand Letter began with Turenne's counsel lamenting the failure of Debtor's counsel to return a phone call and the fact that the Debtor had failed to pay the August and September rent, or respond regarding the Debtor's purchase of the Facilities pursuant to an asset purchase agreement. The letter continued:

> This letter serves as notice of your client's default under Section 8.01 of the lease Agreement. Further, as permitted by Section 8.02(b) my client intends to retake the premises on September 30, 2010 and reserves the right to exercise such other remedies as may be permitted by law or the Lease Agreement.

---

"notice" and "demands" in the quoted sentence was a typographical error and if so, should have been "or." If there was no error, then the required procedure under the Lease for giving notice applied only to notices making a demand—for example a demand for payment of rent or surrender of the Facilities— not notices without demands, such as a notice from the Debtor requesting a renewal of the Lease and notice from Turenne of its agreement to or rejection of such a request. Apparently Turenne did not consider compliance with Section 8.07 as an issue, and no evidence was offered to clarify what the Court considers an ambiguity. In any event, since Turenne did not rely on Section 8.07 to support its position, neither will the Court.

[5]Rent was due on the first day of the month, although Section 2.03(a) allowed a 15-day grace period before late penalties were assessed.

[6]Movant Exhibit 2 is a copy of the Demand Letter.

[7]It appears the Demand Letter complied with the notice requirements of Section 8.07 with one exception: It was addressed to Debtor's counsel, not the Debtor.

3

My client has no further interest in continuing the negotiations with your client in light of your client's repeated violations of the Lease Agreement.

Accordingly, there are two questions that may need to be answered: Was the Lease term effectively extended? And if so, was it terminated by virtue of the Demand Letter or otherwise? If the first question is answered in the negative, the second will no longer be relevant.

For the Court to find the Lease was extended beyond September 30, 2010, it must conclude the parties reached a mutual agreement in writing that satisfied the conditions for an extension under Section 2.02. Although informal, it is difficult to read the email-exchange between the parties and conclude other than that they both agreed to an extension of the Lease; however, does the email-exchange constitute a writing sufficient to satisfy Section 2.02? The Court could locate no decision based on Alabama law regarding whether email-correspondence satisfies a condition expressed in the parties' original written contract that subsequent agreements related to their original contract must also be in writing.[8]

---

[8]Section 9.11 of the Lease provides that it is to be construed under Alabama law.

In its Opposition (Doc. 28) to the Motion, the Debtor cites Rule 1001(1) of the Federal Rules of Evidence as supporting its position that email-correspondence should be considered a writing. Rule 1001(1) sets forth the definition of "writings and recordings" for Article X of the Fed. R. Evid., and provides that "'Writings and recordings' consist of letters, words or numbers . . . set down in handwriting, typewriting, printing . . . magnetic impulse, mechanical or electronic recording, or other form of data compilation." Unquestionably, an email-message would fall within the foregoing definition of writings and recordings. Nonetheless, what may be considered "writings" for discovery purposes or as admissible evidence, is different from what should be considered a sufficient writing to satisfy an expressed requirement under a contract that itself is written.

The Uniform Electronic Transaction Act, Ala. Code § 8-1A-1 *et seq.*, is recognition that the transaction of business through electronic means has become commonplace. In fact, according to the Act "[i]f a law requires a record to be in writing, an electronic record satisfies

There is nothing to be found in the parties' course of dealings that convinces the Court that they intended to abandoned the Lease terms with regard to its extension. Email-correspondence is not a writing in the conventional sense, it is an electronic transmittal of information. In this case the parties email-exchange cannot be elevated beyond a discussion of issues pertaining to the Lease. Before the advent of email, such an exchange would perhaps have taken place over the telephone. If such a telephone conversation had been recorded and later transcribed, the printed transcription would not be considered a writing satisfying a requirement in a previously written contract that an extension of its terms be evidenced by a formal writing. While the parties could have agreed that an email-exchange could constitute a writing sufficient to satisfy the terms of the Lease, they did not choose to do so. The Court will not casually ignore the bargained-for contract provision requiring that an extension of the Lease be evidenced by the parties' written agreement—a tangible written document with signatures—to do otherwise fosters uncertainty with regard to the status of important contractual obligations.

Accordingly, the Court finds that for an extension of the Lease to have been effective, the mutual agreement between the Debtor and Turenne must have been evidenced by a tangible written document that was not unlike the Lease itself; no such tangible writing exists. The email-exchange, although later converted from an electronic format to a printed one, cannot be recognized as a

---

the law." Ala. Code § 8-1A-7(c). However, the Act does not require that everyone must abandon old-fashioned pen and paper: "This chapter applies only to transactions between parties each of which has agreed to conduct transactions by electronic means. Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." Ala. Code § 8-1A-5(b). There is no evidence before this Court to suggest that the parties intended for their email-communications to usurp the express terms of their Lease.

5

substitute for a formal writing when the written Lease—the original and controlling contract—unequivocablely required a subsequent written agreement as the means to achieve an effective extension. If the Debtor had paid, and Turenne had accepted rent after September 30, 2010, then the Court might have ruled that through their course of dealings the parties had abandoned the strict conditions stated in the Lease for an extension; but those were not the facts.

Without a written extension of the Lease term, the Lease expired prepetition on September 30, 2010. When the Debtor filed its petition for relief, it held no leasehold estate in the Facilities, and was an unauthorized hold-over tenant. Under these circumstances, this Court has no authority to judicially extend the Lease term. Code § 365(a) allows a chapter 11 debtor-in-possession to assume only an *unexpired* lease. And subsection (c)(3) of § 365 expressly prohibits assumption of a nonresidential real property lease that was terminated prepetition. And more to the point, Code § 362(b)(10) provides that the automatic stay does not operate as a stay "of any act by a lessor . . . under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of . . . a case . . . to obtain possession of such property." The Lease in this case expired and terminated under its own terms prior to date the Debtor filed its petition for relief.

## ORDER

Accordingly, it is ORDERED that Turenne's Motion is hereby GRANTED, and although it appears the automatic stay imposed by Section 362(a) does not apply to the Lease because the Lease expired prepetition (Code § 362(b)(10)), to the extent the stay might be applicable to Turenne's right

6

to recover possession of the Facilities covered by the Lease, such stay is hereby terminated.[9]

Dated: December 9, 2010

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

[9] In addition to the Court's determination that under Code § 362(b)(10) the stay does not apply to Turenne's rights to take possession of the leased Facilities, the Court finds cause exists under Code § 362(d) for termination of the stay. The evidence presented at the hearing on the Motion showed that the Debtor had failed to pay utility bills for the Facilities and state employee withholding taxes, and had made no attempt to pay rent after the date it claimed the Lease had been extended. The financial condition of the Debtor has deteriorated to such a degree that the Court has serious concerns about the care the Debtor is able to provide to the patients and residents at the Facilities. Moreover, Debtor's chief executive officer, Linn Wright, resides in Utah and failed to appear at either of the hearings held in this case. The Court questions his commitment to the reorganization of the Debtor.